**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KERRI WEAVER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-2233 |
| | § | |
| CELEBRATION STATION PROPERTIES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This is a personal injury case involving a go-kart accident at an amusement park that caused the plaintiff, Kerri Weaver, to fracture her heel. Weaver sued the amusement park's owner, Celebration Station Properties ("Celebration"), on behalf of herself and her minor daughter, seeking damages for negligence. After discovery, Celebration moved for summary judgment. Weaver responded, Celebration replied, and Weaver filed a surreply, which Celebration moved to strike. Both parties have moved to exclude expert testimony, and Celebration has moved to exclude certain evidence and to designate the other go-kart driver as a responsible third party. (Docket Entry Nos. 26; 27; 28; 29; 30; 31; 32; 33; 34; 35).

Based on a careful review of the pleadings; the motions, response, and reply; the record; and the applicable law, the court grants Celebration's motion for summary judgment, denies its motion to strike Weaver's surreply, and denies the parties' remaining motions as moot. The reasons for these rulings are explained in detail below.

## I. Background

On August 12, 2012, Kerri Weaver visited Celebration's amusement park in Oklahoma City, Oklahoma, with her three children. (Docket Entry No. 26, Ex. A, 16:14-23; 19:3-8). Two of her children used the park's go-karts without mishap. (*Id.*). Weaver took the third child, B.W., on a ride. (*Id.*). Weaver had frequently driven go-karts. (*Id.* 23:10-25; 24:1-13). She testified in her deposition that she had no problems with the track layout or the equipment during her first two rides that day. She testified that the track was not more crowded during her ride with B.W. than it had been on her earlier rides that day. (*Id.* 19:12-23; 27:2-20). Weaver saw signs warning drivers against bumping other go-karts and to keep arms and legs inside the go-karts. (*Id.* 21:11-22). She testified that a Celebration employee gave the drivers verbal instructions before they began, although it was hard to hear everything said because the pit area was noisy. (*Id.* 21:23-25; 22:1-11).

During Weaver's ride with B.W., another go-kart driver bumped their go-kart, causing Weaver's heel fracture. (*Id.* 31:3-25; 38:3-25; 42:1-25). B.W. was not physically hurt but witnessed her mother's injury. Celebration's video-recording system was malfunctioning that day and did not record the accident.

On June 24, 2014, Weaver sued Celebration in Texas state court on behalf of herself and B.W. Weaver alleged that Celebration's negligent failure to inspect the amusement area, adequately warn customers not to bump into other go-karts, train and supervise its employees, and instruct and train go-kart drivers, caused her injury. (Docket Entry No. 1, Ex. A). She sought damages for her own injury and for her daughter's bystander suffering. Celebration timely removed on the basis of diversity jurisdiction and, after discovery, moved for summary judgment, arguing that it owed Weaver no duty to warn her about the open and obvious risks inherent in go-kart racing and, in any

event, did not breach that duty. (Docket Entry No. 26).

Weaver responded that Celebration owed her a duty as a business invitee and breached this duty when it failed to guard against other reckless drivers. (Docket Entry No. 27). She cited her own deposition testimony and that of Celebration's corporate representative. She cited, but did not attach, the relevant record evidence with her response. She also stated that she had not had an opportunity to depose the Celebration employees who were working at the go-kart center when the incident ocurred.

Celebration replied, arguing that summary judgment was proper based on both its previous arguments and Weaver's failure to attach the record evidence she cited. (Docket Entry No. 28). Weaver filed a surreply in which she reiterated her response arguments and attached the documents she had failed to submit earlier. (Docket Entry No. 29). Celebration moved to strike Weaver's surreply. (Docket Entry No. 30).[1]

The parties' arguments and responses are analyzed below.

## II. The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial

[1] Celebration also moved to designate, as a responsible third party, the John Doe driver of the go-kart that hit and injured Weaver. (Docket Entry No. 31). Weaver did not respond. Both parties moved to exclude each other's experts, (Docket Entry Nos. 33, 34, 35), and Celebration filed a motion in limine to exclude certain evidence at trial, (Docket Entry No. 32). The motions are denied as moot.

burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine and material factual dispute, it need not negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot rest on its pleading allegations. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'" *Little*, 37 F.3d at 1075 (internal citations omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

## III. The Governing Law

"'A federal court must follow the choice-of-law rules of the state in which it sits.'" *Fina*,

*Inc. v. ARCO*, 200 F.3d 266, 269 (5th Cir. 2000) (quoting *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996)). "For both tort and contract cases, Texas follows the 'most significant relationship test' set out in the Restatement (Second) of Conflict of Laws § 6 and § 145." *DTEX, LLC*, 508 F.3d at 802 (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 848 (Tex. 2000); *Guiterrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)). "Some relevant factors to consider include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Id.* (quotations and alteration omitted); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.

The parties agree that Oklahoma has the most significant relationship to this case. Weaver's injury occurred at Celebration's Oklahoma amusement park, where the alleged negligent acts and omissions took place and where most of the evidence and witnesses are located. Oklahoma law governs this dispute.

## IV. Analysis

### A. Celebration's Motion to Strike

Celebration asks the court to strike Weaver's surreply because it introduces evidence and argument without giving Celebration, the summary judgment movant, a fair opportunity to respond. "Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Lacher v. West*, 147 F. Supp 2d 538, 539 (N.D. Tex. 2001). But Weaver's response cited and discussed the parts of the summary judgment record that she attached to the surreply. Celebration is not prejudiced by the surreply attaching exhibits already cited and discussed in the response.

Celebration's motion to strike, (Docket Entry No. 30), is denied.

### B. Celebration's Motion for Summary Judgment

To recover for negligence under Oklahoma law, a plaintiff must show: (1) a duty of care owed by defendant to plaintiff; (2) defendant's breach of that duty; and (3) injury to plaintiff caused by defendant's breach of that duty. *See Berman v. Lab. Corp. of Am.*, 268 P.3d 68, 72 (Okla. 2011); *Lincoln Nat'l Life Ins. Co. v. Cowboy Athletics, Inc.*, 934 F. Supp. 2d 884, 894 (N.D. Tex. 2012). Celebration argues that it is entitled to judgment as a matter of law on the undisputed summary judgment record because it: (1) owed no duty to warn Weaver of open and obvious dangers; (2) did not breach that or any other duty owed to Weaver or B.W.; and (3) B.W.'s claim for bystander liability fails because she did not suffer physical injury.

#### 1. A Duty to Warn Against the Risk of Contact

"The threshold question in any negligence action is whether the defendant has a duty to the plaintiff." *Sholer v. ERC Mgmt. Group, LLC*, 256 P.3d 38, 43 (Okla. 2011). "The relevant inquiry for assessing the existence of a duty in negligence cases [is] . . . as follows:

> One of the most important considerations in establishing a duty is foreseeability. Foreseeability is critical as it determines (1) to whom a duty is owed and (2) the extent of the duty. A defendant owes a duty of care only to foreseeable plaintiffs. As for the extent of the duty, it too is determined in great part by the foreseeability of the injury. Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises.

*Wood v. Mercedes-Benz of Oklahoma City*, 336 P.3d 457, 460 (Okla. 2014). In Oklahoma, "[a] business invitor has a duty to exercise reasonable care to prevent injury to an invitee." *Hatcher v. Super C Mart*, 24 P.3d 377, 379 (Okla. App. 2001). "[B]ut an invitor owes no duty to protect against hazards which are open and obvious." *Id.* (citing *Williams v. Tulsa Motels*, 958 P.2d 1282,

1284 (Okla. 1998)). It is a "long-standing rule" that

> [t]he invitee assumes all normal and ordinary risks attendant upon the use of the premises, and the owner or occupant is [not] liable for injury to an invitee resulting from a *danger which was obvious or should have been observed* in the exercise of ordinary care.

*Id.* (quoting *Williams*, 958 P.2d at 1284 (emphasis original)).

In *Tucker v. ADG, Inc.*, 102 P.3d 660 (Okla. 2004), the Oklahoma Supreme Court applied this rule to affirm a summary judgment dismissing the plaintiff's claims. The plaintiff in *Tucker* was injured watching a baseball game at the defendants' ballpark "when a foul ball struck his left facial and eye area." *Id.* at 662. He alleged that the defendants "'negligently fail[ed] to provide a reasonably safe facility and premises, which complied with architectural design standards and baseball stadium and seating standards, as well as use of protective devices, nets, and other available safeguards available on the market.'" *Id.* He also alleged that the defendants "failed to warn [him] 'of known dangers on [their] premises, which [they] created' and the '[t]he protective net behind home plate was dangerous in design and wasn't large enough and was too low to protect [him] from injury.'" *Id.* at 663. The trial court granted the defendants' motion for summary judgment. The Oklahoma Supreme Court affirmed, stating that while the rule had at times been "summarily labeled 'assumption of the risk,'" it "actually encompasse[d] several additional key determinations as a matter of law," including "the absence of a duty on the part of the owner or occupant of the premises to reconstruct or alter the premises so as to obviate known and obvious dangers, and the absence of defendants' liability for a spectator's injury resulting from an obvious danger or one that should have been observed in the spectator's exercise of ordinary care." *Id.* at 666. Applying this rule, the Court concluded that "the risk of injury by a foul ball is a normal or ordinary risk, which is open and obvious to a spectator at a baseball game as a matter of law, for which defendants have no duty to

warn." *Id.*

Weaver argues that *Wood v. Mercedez-Benz*, 336 P.3d 457 (Okla. 2014), narrowed this rule. In that case, the plaintiff was injured when she slipped on ice outside a car dealership. The plaintiff was catering an event at the dealership when she slipped. The evidence showed that she saw the ice clearly before she slipped on it. The trial court dismissed. The appeals court affirmed on the basis that the plaintiff "acknowledge[d] that the ice presented a known danger." *Wood*, 336 P.3d at 459. The State Supreme Court reversed, finding that the dealership "had a duty to take precautionary measures for the employees of" the plaintiff's catering company. *Id.* at 460. The Court based its ruling on "the peculiar facts of [the] case." *Id.* The dealership's sprinkler system caused the ice accumulation, and the dealership "had notice of the icy conditions surrounding the entire building and knew that Ned's Catering was sending its employees to the facility to cater the business' scheduled event." *Id.* The Court distinguished the "typical [business invitee] case involving an 'open and obvious' danger," in which "the invitee can protect herself by leaving the premises when an open and obvious hazard is encountered or by avoiding the premises altogether." *Id.* at 459 n.6. In *Wood*, "neither of these choices was available to" the plaintiff because "[s]he was not a customer of the dealership, but was present to fulfill her employer's contractual duty to provide service for an event sponsored by the dealer" and her "presence and exposure to the hazardous icy condition was compelled to further a purpose of the dealership." *Id.*

Here, unlike in *Wood*, Weaver was under no obligation to expose herself to the inherent risks of go-kart driving. Like the baseball spectator in *Tucker*, Weaver was aware of the obvious risks of contact or collision while riding a go-kart on a track with other go-karts traveling at approximately 18 to 20 miles per hour. Weaver's personal experiences with go-karts made those

inherent risks even more open and obvious. (Docket Entry No. 26, Ex. A, at 23:10-25; 24:1-15; 37:8-14).[2] Celebration owed Weaver no duty to warn her of the open and obvious dangers of go-kart driving.

**2. A Breach**

Celebration argues that, even if it owed a duty to warn Weaver of the risks of riding go-karts, it fulfilled that duty and did not breach any other duties it owed Weaver or her daughter. Celebration points to Weaver's testimony that she saw signs discussing safety at the go-kart track, including signs prohibiting riders from bumping each other on the track, and signs advising riders to keep their arms and legs inside the go-kart. (Docket Entry No. 26, Ex. A, at 21:11-22). Celebration also points to Weaver's testimony that she heard an employee give instructions over a loudspeaker before each go-kart ride. (*Id.*, Ex. A 21:23-22:15).

Weaver argues that Roger McKelvie, Celebration's corporate representative, admitted during his deposition that no employee witnessed her accident, despite the company's policy of having employees look out for "bumping" and bad drivers; that the closed-circuit camera was not functioning that day; and that a person's height was the only limit applied to who could ride the go-karts. (Docket Entry No. 27 (citing McKelvie Depo, 33:3-5)). But Weaver testified that she did not see or have any problems with the go-kart track's layout, its equipment, or the number or behavior of other drivers. (Docket Entry No. 26., Ex. A, at 19:12-23; 26:20-25, 27:1-14). Weaver also testified that until the collision, she had no problems with the driver who bumped her and did not remember anybody driving aggressively. (*Id.*, Ex. A, at 28:6-22). Weaver testified that

[2] Weaver also argues that the "open and obvious" rule applies to a "condition of land," not a "negligent activity." (Docket Entry No. 27, at 1). But the cases applying the rule to circumstances including spectator injuries, such as those caused by foul balls at baseball games, are squarely to the contrary.

Celebration's staff responded within one to two minutes of the accident and that they safely cleared her and her daughter from the track. (*Id.*, Ex. A, at 32:19, 33:10-19).

Weaver also argues that Celebration's failure to maintain a database and system for tracking "bad apple" drivers who had previously been reckless and caused collisions or wrecks breached its duty of care. She points to an insurance group "Loss Control Alert" regarding "Go Kart Operations" that her counsel obtained from the Internet. That document recommends that go-kart ride operators prohibit "[p]reviously unruly or reckless drivers" though a "driver database." (Docket Entry No. 27; Docket Entry No. 29, Ex. B). The insurance group that prepared the form did not insure Celebration, and its corporate representative denied ever seeing such a form. (Docket Entry No. 29, Ex. A 44:20-25; 45:1-5; 50:2-24). In any event, Weaver has neither alleged nor identified record evidence supporting an inference that the driver who bumped her go-kart and caused her injuries was a "bad apple" who could have been screened through such a system. She testified that the driver did not exhibit any dangerous driving before the collision. (Docket Entry No. 26, Ex. A, at 28:6-22).

Finally, Weaver argues that McKelvie admitted to "giving depositions in 20 prior lawsuits" against Celebration about undisclosed matters and asserts that "at least some of these lawsuits involved these types of claims" and put Celebration on notice of the potential harm facing Weaver. (Docket Entry No. 27, at 4-5). But Weaver has not identified record evidence supporting her assertions or that the prior lawsuits involved go-kart rides, as opposed to other activities at Celebration's amusement parks. McKelvie's testimony does not provide further support for her assertions. And even if prior lawsuits involved go-karts, that is also consistent with the inherent risks in go-kart rides.

A reasonable jury could not find, based on the summary judgment record, that Celebration

breached a duty owed to Weaver or her daughter.[3]

**3. Bystander Liability**

Celebration argues that Weaver's bystander-liability claim on her daughter's behalf also fails as a matter of law. Weaver's petition alleged that B.W. "suffered shock and mental anguish as a result of" witnessing her mother's "terrible injuries." (Docket Entry No. 1-2, ¶ 11). According to the petition, the source of these injuries was Celebration's alleged negligence, not an intentional tort. (*See id.*). This claim fails in light of the court's conclusion that Celebration did not breach duties owed to Weaver and B.W. And even if Celebration's employees acted negligently, the bystander claim still fails.

"[E]motional distress caused by a willful, actionable tort is recoverable, even absent physical injury, if it is the natural and probable consequence of the tortious act." *Coble v. Bowers*, 809 P.2d 69, 73 (Okla. App. 1990). To recover damages for "distress resulting from breach of contract or negligence . . . requires a showing of physical injury." *Id.* (citing *Ellington v. Coca-Cola Bottling Co.*, 717 P.2d 109 (Okla. 1986)). Under Oklahoma on bystander liability claims, "recovery for mental anguish is restricted to such mental pain or suffering *as arises from an injury or wrong to the person rather than from another's suffering or wrongs committed against another person*." *Slaton v. Vansickle*, 872 P.2d 929, 931 (Okla. 1994) (emphasis in original).

The summary judgment record contains evidence that Weaver suffered a fractured heel as a result of the go-kart collision. But Weaver has neither pointed to nor submitted any record

---

[3] Weaver designated experts on liability and damages in December 2014, but she did not file competent expert reports with the court at that time or later, in response to Celebration's motion for summary judgment. (Docket Entry No. 24; *see also* Docket Entry No. 33); *see also* FED. R. CIV. P. 56(c)(1)(A), 2010 Advisory Committee's Notes (providing that "[m]aterials that are not yet in the record—including materials referred to in an affidavit or declaration—must be placed in the record" for a nonmovant to rely on them in opposing summary judgment).

evidence showing that her daughter, as opposed to Weaver herself, suffered physical injury. In the absence of such evidence, her daughter's bystander-liability claim based on Celebration's alleged negligence fails.

**4. A Continuance**

Weaver contends that "summary judgment is premature" because Celebration "has failed to identify or make available any of its employees who may have witnessed the wreck, and failed to disclose why they no longer work for it." (Docket Entry No. 27, at 2). Weaver also argues that when she propounded interrogatories asking about prior accidents and lawsuits at Celebration's amusement parks, Celebration objected on the ground that they were "not reasonably calculated to lead to the discovery of admissible evidence." (Docket Entry No. 29, at 4). But Weaver did not bring either matter to the court's attention or file a motion to compel this discovery from the defendants after a premotion discovery conference. Nor has Weaver moved for relief under Federal Rule of Civil Procedure 56(d). Even if she had, she has failed properly to demonstrate why summary judgment is premature. She did not submit an affidavit or declaration in support of her argument. *See* FED. R. CIV. P. 56(d) (allowing a court to defer consideration of a motion "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition" to summary judgment). Celebration also provided Weaver with the names of each employee who worked at the amusement park's go-kart facility that day, as well as over 200 pages of responsive documents that included the names, addresses, and contact information for those employees. (Docket Entry No. 28, at 5 & Ex. A, Interrogatory Responses 6 & 9).

Weaver has not shown that the court should defer ruling on Celebration's motion for

summary judgment.

## IV. Conclusion

The court grants Celebration's motion for summary judgment, (Docket Entry No. 26), denies Celebration's motion to strike Weaver's surreply, (Docket Entry No. 30), and denies the remaining motions as moot. (Docket Entry Nos. 31, 32, 33, 34, 35). Final judgment is entered by separate order.

SIGNED on April 28, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge